J-S24014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BYRON TAYLOR | |
| Appellee | No. 2398 EDA 2014 |

Appeal from the Order July 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002142-2014

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 22, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted the motion to suppress of Appellee, Byron Taylor.  We affirm.

In its opinion, the trial court fully set forth the facts and procedural history of this case.  Therefore, we have no reason to restate them.[1]

The Commonwealth raises the following issue for our review:

> WHERE POLICE SAW TWO MEN, [APPELLEE] AND KENNETH THOMAS, ARGUING LATE AT NIGHT IN A HIGH CRIME AREA OF FREQUENT ROBBERIES, AND MR. THOMAS WAS WAIVING HIS HANDS IN THE AIR, AGITATED AND VISIBLY UPSET; AND UPON THE APPROACH OF THE POLICE [APPELLEE] WALKED AWAY, AND MR. THOMAS

---

[1] We observe, however, that the correct date of the order appealed from is July **15**, 2014.

> TOLD THEM THAT HE DID NOT KNOW [APPELLEE], AND THAT [APPELLEE] HAD BEEN FOLLOWING HIM AND "MESSING WITH" HIM, DID THE [TRIAL] COURT ERR IN SUPPRESSING [APPELLEE'S] GUN ON THE GROUND THAT THE POLICE LACKED AN ARTICULABLE REASON TO STOP HIM FOR INVESTIGATION?

(Commonwealth's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles J. Cunningham, III, we conclude the Commonwealth's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. *See* Trial Court Opinion, filed December 1, 2014, at 4-7 (finding: uncontroverted testimony of Officer Santiago established Officer Doorley grabbed Appellee to talk to him; reasonable person in Appellee's position would not believe he was free to leave when physically restrained by uniformed police officer; when police grabbed Appellee, he was subject to investigative detention requiring reasonable suspicion that Appellee was involved in criminal activity; genesis of investigation was Officer Santiago's observation of Appellee and another man arguing on street in high-crime area; Appellee and other man were not, however, involved in physical fight or otherwise engaged in behavior indicative of criminal activity; when police approached, Appellee and other man simply walked away; further investigation by officers failed to uncover evidence that criminal activity was afoot; other man stated Appellee was "messing with" him, but no testimony was offered regarding any criminal behavior;

Officer Santiago's observations of Appellee's appearance and behavior during subsequent stop of Appellee are irrelevant to determination of whether reasonable suspicion existed to initiate stop; other surrounding circumstances—including late hour of night, lack of bars on block where Appellee was standing, and Appellee's act of walking up steps to enter his residence when police approached him—failed to give rise, alone or in aggregate, to reasonable suspicion; court properly suppressed evidence recovered from Appellee's person during unlawful stop). Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2015

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS, CRIMINAL TRIAL DIVISION**

CP-51-CR-0002142-2014 Comm. v. Taylor, Byron
Opinion

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | 2398 EDA 2014 |
| v. | : | |
| | : | CP-51-CR-0002142-2014 |
| BYRON TAYLOR | : | |

7228458911

**OPINION**

FILED

DEC 0 1 2014

Criminal App...
First Judicial District of PA

## STATEMENT OF THE CASE

The Commonwealth is appealing the Court's order of July 14, 2014, granting Defendant's motion to suppress physical evidence. The Commonwealth complains that the Court erred in finding that the police lacked reasonable suspicion to stop Defendant. This complaint is without merit.

## PROCEDURAL HISTORY

On February 10, 2014, Defendant was arrested and charged with various offenses[1] related to his alleged illegal possession of a firearm. On May 1, 2014, Defendant filed a motion to suppress all physical and testimonial evidence gathered by the police pursuant to Defendant's arrest. On June 20, 2014, the Court held a hearing on Defendant's motion. At this hearing Defendant's counsel argued only for the suppression of a firearm recovered from Defendant's person, stating that there was in fact no testimonial evidence to suppress. (N.T. 6/20/14 pgs. 4-5)

---

[1] Possession of a Firearm by a Prohibited Person pursuant to 18 Pa.C.S.A. § 6105(a)(1); Altering or Obliterating Marks of Identification pursuant to 18 Pa.C.S.A. § 6117(a); Firearms not to be Carried Without a License pursuant to 18 Pa.C.S.A. § 6106(a)(1); Carrying Firearms on Public Streets in Philadelphia pursuant to 18 Pa.C.S.A. § 6108.

At the conclusion of this hearing the Court granted Defendant's motion. On July 15, 2014, the Court heard and granted the Commonwealth's motion to reconsider and vacated its earlier order. However, at the conclusion of this hearing the Court again granted Defendant's motion to suppress.[2] On August 14, 2014, the Commonwealth filed this timely interlocutory appeal, certifying that the Court's order of July 15, 2014, terminated or substantially handicapped the prosecution. Also, on August 14, 2014, the Commonwealth filed a "Statement of Errors Complained of on Appeal" pursuant to Pa.R.A.P. 1925(b). The Commonwealth raises the following issue on appeal:

> Where police saw two men, defendant and Kenneth Thomas, arguing late at night in a high crime area of frequent robberies, and Mr. Thomas was waiving his hands in the air, agitated, and visibly upset; and upon approach of the police defendant walked away, and Mr. Thomas told them that he did not know defendant, and that defendant had been following him and "messing with" him, did the lower court err in suppressing defendant's gun on the ground that the police lacked an articulable reason to stop him for investigation?

## FINDINGS OF FACT

At the suppression hearing held on June 20, 2014, the Court heard testimony from Philadelphia Police Officer Juan Santiago regarding the circumstances of Defendant's arrest and the recovery of the firearm from his person that gave rise to that arrest. On February 10, 2014, at approximately 12:22 a.m. Officer Santiago and a partner, Officer Doorley, were on routine patrol in a marked police car in the area of 5700 Market Street in the City of Philadelphia when Officer Santiago observed Defendant and another man (hereinafter "the other man") having what Officer Santiago believed to be an argument (N.T. 6/20/14 pgs. 9-10) Officer Santiago testified that he

---

[2] The Court's original written order of 7/15/14 reflected that the Commonwealth's motion for reconsideration had been denied. However, at a subsequent hearing on 7/31/14 the Court ordered that the docket should reflect that on 7/15/14 the Commonwealth's motion to reconsider had been granted, that the Court's 6/20/14 order granting Defendant's motion to suppress was vacated, and that the Court again heard and granted Defendant's motion to suppress on 7/15/14. (N.T. 7/31/14 pgs. 5-6)

2

believed the men were having an argument because the two were facing one another, making "serious faces", and because the other man was very animated and making "hand gestures." Officer Santiago also testified that the men were in a "high crime area" and that there were no open business establishments on the block. (N.T. 6/20/14 pgs. 10-11, 17-18)

Upon witnessing this apparent argument, the officers made a U-turn in their patrol car and circled around to approach the two men. Officer Santiago testified that when Defendant and the other man saw the officers approaching they walked away in opposite directions. The officers then approached the other man and asked him "what's going on, what happened [?]" The other man told the officers that he did not know Defendant and that Defendant had been following him and "messing with" him. Officer Santiago testified that the other man looked "worried and agitated." After ascertaining the other man's identity the officers released him. (N.T. 6/20/14 pgs. 11-12)

The officers then surveyed the area in their police car in an attempt to find Defendant. About a block away the officers encountered Defendant, who was coming down from a porch on the west side of the street and crossing to the other side. Officer Santiago testified that when Officer Doorley exited the vehicle and approached Defendant he "immediately" began to walk up the steps to a residence. This residence was later ascertained to be Defendant's own home. (N.T. 6/20/14 pgs 13, 19, 28)

Officer Santiago testified that when Defendant began to walk up the steps Officer Doorley "grabs him to talk to him." He further testified that Defendant "bladed" the right side of his body away from Officer Doorley. While Officer Doorley was holding onto Defendant from the left Officer Santiago approached from the right. Officer Santiago noticed that the right side of Defendant's pants were "sagging" as if burdened by a heavy object and he reached out to feel

3

Defendant's pocket. Officer Santiago testified that he could tell by feeling the pocket that there was a handgun inside. Officer Santiago reached into the pocket and found a loaded pistol. (N.T. 6/20/14 pgs. 13-14, 18-19)

## DISCUSSION OF THE ISSUE RAISED

I. **THE COURT PROPERLY SUPPRESSED PHYSICAL EVIDENCE RECOVERED FROM THE DEFENDANT BECAUSE THE POLICE LACKED THE REASONABLE SUSPICION OF CRIMINAL ACTIVITY NECESSARY TO INITIATE AN INVESTIGATORY STOP.**

When the Commonwealth appeals the grant of a suppression motion the reviewing court must consider "only the evidence presented by the defendant and so much of the evidence for the prosecution which, when read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Pizarro*, 723 A.2d 675, 676-677 (Pa. Super. 1998) (*citing Commonwealth v. Mendenhall*, 552 Pa. 484, 486, 715 A.2d 1117, 1118 (1998)). If the evidence supports the suppression court's findings of fact, the reviewing court should reverse only if the legal conclusions drawn from the evidence are erroneous. *Id.*

Where a defendant has made a motion to suppress evidence, the burden is on the Commonwealth to prove by a preponderance of the evidence that the challenged evidence was not obtained in violation of the defendant's rights. *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. 2012) For constitutional purposes there are three well established categories of interactions between police officers and a criminal suspect: (1) a "mere encounter", which does not need to be supported by any level of suspicion, (2) an "investigative detention", which must be supported by "reasonable suspicion", and (3) an arrest, which must be supported by "probable

4

"reasonable suspicion" that Defendant was involved in criminal activity based on specific and articulable facts. *McClease*, 750 A.2d at 325

Applying the standard explained above, the Court correctly concluded that the Commonwealth failed to meet its burden of showing that the police officers who stopped Defendant articulated sufficient facts to justify a reasonable suspicion that defendant was engaged in criminal activity. The genesis of the investigation was Officer Santiago's observation of Defendant and another man arguing in what Officer Santiago identified as a "high crime area." However, the two were not involved in a physical fight or otherwise engaging in behavior indicative of criminal activity. When the police approached to investigate, the two men simply walked away. The Superior Court has said that "an individual's act of merely walking away from police officers in a 'high crime area' is manifestly insufficient to justify an investigative detention of that individual." *Commonwealth v. Key*, 789 A.2d 282, 289-290 (Pa. Super. 2001) Further investigation by the officers failed to uncover evidence that criminal activity was afoot. When the police interviewed the other man he reported that Defendant was "messing with him" but no testimony regarding criminal behavior was offered. Officer Santiago proffered other apparently suspicious circumstances justifying the seizure of Defendant: it was late at night, there were no bars in the area[3], and when officers encountered Defendant for a second time he was crossing the street and, upon seeing the officers, walked up the steps to enter a building. The Court finds that none of the circumstances, alone or in the aggregate, gave rise to reasonable suspicion.

It must be noted that Defendant's action in turning his body away from Officer Doorley after being stopped, and Officer Santiago's observation that Defendant's pants were "sagging" as

---

[3] The Court notes that Officer Santiago testified on cross-examination that he was unsure whether there were bars near the area where Defendant and the other man were, although he did testify there were none on the exact block where the men were standing. (N.T. 6/20/14, pgs. 12, 38-39)

if weighed down by a gun, are not relevant to the determination of whether reasonable suspicion existed to initiate the stop. Defendant was stopped for investigation prior to the occurrence of these events and reasonable suspicion did not exist to justify the initial stop.

## CONCLUSION

Because the police lacked reasonable suspicion to stop Defendant, the Court properly granted Defendant's motion to suppress evidence recovered from Defendant's person.

BY THE COURT:

December 1, 2014

HON. CHARLES J. CUNNINGHAM, III

7