J-S07029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE CAMPBELL | : | |
| | : | |
| Appellant | : | No. 1851 EDA 2017 |

Appeal from the Judgment of Sentence May 18, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0001160-2016

BEFORE:  BENDER, P.J.E., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                **FILED AUGUST 21, 2018**

Tyrone Campbell appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas following his conviction for possession with intent to distribute. We affirm.

The relevant facts and procedural history of this case are as follows. In order to apprehend suspects soliciting prostitutes, the Bensalem Police Department conducted an undercover sting operation using an advertisement for a prostitute placed on the website backpage.com. Officer Jillian Fox, playing the role of a prostitute, responded to messages from interested customers, and invited them to meet her at the Red Roof Inn. Appellant contacted Officer Fox for "full service" pricing information, and arranged to meet her at the hotel. N.T., Suppression, 1/9/17, at 11-12. Upon arrival, Appellant counted out money for Officer Fox, and placed it on the bed. Officer Fox then signaled to officers watching the exchange on a video feed, who

entered the room and handcuffed Appellant.

The arresting officers asked to search Appellant's car, and Appellant gave them verbal permission to do so. He also told the officers his cell phone was in the vehicle. One of the officers then reviewed a consent to search form with Appellant, who signed it. As Appellant's car was towed to the police station to be searched, officers apprised Appellant of his *Miranda*[1] rights and interviewed him about why he came to the hotel. During the search of Appellant's car, officers located approximately $4,800.00 in cash, two cell phones, and a blue backpack containing 350 wax paper baggies filled with heroin.

Appellant was charged with possession with intent to distribute ("PWID"), possession of drug paraphernalia, criminal use of a communications facility, and soliciting a person to patronize a prostitute.[2] He filed a pretrial motion seeking to suppress evidence obtained in the search of his car, as well as statements he made to police before he was read his *Miranda* rights. After a lengthy hearing, the court denied the suppression motion. Appellant thereafter proceeded to a stipulated bench trial. Appellant was found guilty of PWID, and acquitted of the remaining charges. The court sentenced him to 2½ to 7½ years' incarceration. This timely appeal followed.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] 35 P.S. § 780-113(a)(30), (a)(32), and 18 Pa.C.S.A. §§ 7512(a), 5902(b)(4), respectively.

Appellant challenges the denial of his suppression motion. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

Appellant first claims the police questioned him before he was given **Miranda** warnings. When this Court assesses whether **Miranda** warnings were necessary, we consider the totality of the circumstances. **See Commonwealth v. Gonzalez**, 979 A.2d 879, 888 (Pa. Super. 2009). "Interrogation occurs where the police should know that their words or actions

are reasonably likely to elicit an incriminating response from the subject." *Id*. (citation omitted). By contrast, a statement will not be suppressed where the suspect spontaneously volunteers the information. *See Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012). "[G]eneral information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings[,] since it is not information generally considered as part of an interrogation." *Id*. (citation omitted).

Appellant's characterization of the police questioning that occurred prior to his *Miranda* warnings as an interrogation is fanciful. Though Appellant was handcuffed and asked a few questions before being given his *Miranda* warnings, the officers asked only general information questions. The record reveals that when asked by police for his name, Appellant instead said, "[y]ou know who I am." N.T. Suppression, 1/9/17, at 89. Appellant then spontaneously admitted he had been previously arrested on drug charges. *See id*., at 89, 109. Appellant's decision to volunteer this information in response to a general question about his name was not the result of an interrogation, and consequently does not require suppression. Appellant's first issue is without merit.

Appellant next insists he did not give knowing and voluntary consent to search his vehicle, because he was unaware the police could search anywhere in his car, including his trunk. Appellant contends he believed the police were only searching for his cell phone, and the officers exceeded the scope of the search by continuing to search his trunk after finding the phone. We disagree.

- 4 -

"A search warrant is not required where a person with the proper authority unequivocally and specifically consents to the search." ***Commonwealth v. Acosta***, 815 A.2d 1078, 1083 (Pa. Super. 2003) (citations and internal quotation marks omitted). "To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction." ***Commonwealth v. Bell***, 871 A.2d 267, 273 (Pa. Super. 2005). Appellant does not dispute that his interaction with police was a lawful detention. Thus, our focus becomes voluntariness. ***See id***.

"To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances." ***Commonwealth v. Randolph***, 151 A.3d 170, 179 (Pa. Super. 2016) (citation and internal quotation marks omitted). The Pennsylvania Supreme Court has found where officers inform a suspect he has the right to withhold consent, they substantially lessen the probability that their conduct could reasonably be considered coercive. ***See Commonwealth v. Strickler***, 757 A.2d 884, 901 (Pa. 2000). Even a suspect who has been detained and handcuffed may still voluntarily consent to a search. ***See Commonwealth v. Rosas***, 875 A.2d 341, 350 (Pa. Super. 2005). "[G]eneral consent to search a vehicle extends to closed, but readily opened, containers discovered inside the car." ***Randolph***, 151 A.3d at 185 (citation omitted).

Detective Tobie, the officer who reviewed the consent to search form with Appellant, testified he spoke to Appellant in a casual, nonthreatening voice. *See* N.T., Suppression, 1/9/17, at 81. He asked Appellant if he had anything illegal in his vehicle, which Appellant denied. *See id*. He then reviewed the consent to search form with Appellant. *See id*. The form states Appellant's consent was free and voluntary; he understood his right to refuse to give consent; and he could withdraw consent at any time. *See* Consent to Search, dated 1/18/16.

To the extent Appellant contends he believed the police were only searching for his cell phone, and should have halted the search after finding it, Detective Tobie specifically informed Appellant the search was to ascertain whether Appellant had anything illegal in his vehicle. Further, the consent to search form separately lists Appellant's cell phone and his vehicle. And the heroin was discovered in an open backpack in Appellant's trunk. Thus, Appellant's arguments regarding voluntariness and the scope of the search are without merit.

Appellant's final contention, that the search occurred before he gave consent, is belied by the record. He points to a brief line in Officer Fox's report and testimony, that she was later advised Appellant had drugs and money in his vehicle, as proof the officers immediately searched Appellant's car before obtaining consent. However, Officer Gansky testified he participated in the search, and was surveilling the vehicle from the time Appellant arrived until Appellant gave consent for the search. *See* N.T. Suppression, 1/9/17, at 33,

41. Detective Tobie, who obtained Appellant's consent for the search, also confirmed the search did not occur until after Appellant signed the form. ***See id.***, at 85.

While the suppression court acknowledged minor inconsistencies in some of the officers' testimony on "various post-arrest details such as precise times," the court found the officers' testimony credible overall. Suppression Court Findings of Fact/Conclusions of Law, 4/7/17, at 7. And, the court found Appellant's suggestion that the search occurred before he gave consent to be wholly unsupported by the testimony offered at the hearing. ***See id.***, at 8. We agree. Appellant's final claim is also without merit. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/18